United States District Court
Southern District of Texas
FILED

AUG 2 6 2020

David J. Bradley, Clerk

United States District Court
Southern District of Texas
**ENTERED**
August 26, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ROBERTO CARLOS AGUILERA, | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-151 |
| | § | |
| LORIE DAVIS, Director, Texas Department | § | |
| of Criminal Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent. | § | |

## **REPORT AND RECOMMENDATION**

Petitioner Roberto Carlos Aguilera, a state prisoner proceeding pro se, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) Petitioner is serving a 12-year prison term after pleading guilty to aggravated assault with a deadly weapon. The evidence showed that Petitioner threw large garden shears at his nephew, resulting in severe injuries.

After unsuccessfully availing himself of state appellate and post-conviction review, Petitioner now seeks federal habeas corpus relief. In his § 2254 petition, he alleges the following: 1) that he was mentally incompetent to stand trial; 2) that he was wrongfully prevented from withdrawing his guilty plea when the charge against him was changed from a first degree felony to a second degree felony; and 3) that he was entrapped/induced to commit the aggravated assault. Petitioner also alleges that his attorney rendered ineffective assistance of counsel by not allowing him to review the "state's evidence." Pending is Respondent's motion for summary judgment. (Docket No. 11.)

After carefully considering the pleadings and the state court record in light of the deferential standard of review mandated by the Anti-Terrorism and Effective Death Penalty Act

of 1996 (AEDPA), the undersigned concludes that Petitioner has not shown a basis for federal habeas corpus relief. As discussed further below, Petitioner's claims are refuted by the record, conclusory, and/or frivolous. Petitioner has thus failed to show that the state court's rejection of his claims involved an unreasonable application of federal law.

For the reasons discussed further below, the undersigned recommends that the District Court grant Respondent's summary judgment motion and deny habeas relief. It is further recommended that the District Court not issue a certificate of appealability.

## I. BACKGROUND

### A. State Court Proceedings

On November 2, 2016, a grand jury in Cameron County, Texas, indicted Petitioner for aggravated assault with a deadly weapon for "intentionally, knowingly, or recklessly caus[ing] bodily injury" to his nephew "by throwing a pair of scissors or garden shears [at him] striking him in the back."[1] (Docket No. 12-19, at 4.) The aggravated assault occurred in the early morning hours of August 13, 2016. (Docket No. 12-4, at 43.)

During their investigation, officers with Port Isabel Police Department spoke with hospital staff who advised that Petitioner's nephew (Daniel) suffered a "punctured lung and lost a pint of blood" from the attack. (*Id.* at 44.) The night of the attack while still at the hospital, Daniel made a statement to the officers that included the following:

> [H]e heard noises coming from his vehicle so he went to check it out and observed his uncle Robert Aguilera by his vehicle. Daniel stated that his uncle was high on cocaine and [ ] was being combative towards him. Daniel then stated that Robert attempted to punch him and Daniel pushed him off and then Daniel walked away. While he walked away[,] Robert threw []a pair of shears [at him] causing lots of pain. Daniel then ran to his mother and advised her what had happened.

---

[1] The facts and procedural history are taken from the State Court Record filed in this case and the documents submitted by Petitioner and Respondent. (Docket Nos. 1, 11, 12.)

(*Id.*)  Several days later, the police spoke by telephone to Petitioner, who stated that "he was not going to turn himself in." (*Id.*)  He explained that he "got into an altercation and Daniel pushed him [and as a result] he fell and twisted his ankle." (*Id.*)  Petitioner then responded by "grabb[ing] unknown objects" and throwing them at Daniel "not knowing that there was shears and were going to hurt him." (*Id.*)

Ultimately, Petitioner pleaded guilty pursuant to a plea agreement.  In exchange for pleading guilty, the state agreed to recommend that he be sentenced to 12 years imprisonment,[2] to recommend that the Court decline to make a "deadly weapon" finding, [3] and to dismiss several other criminal charges that were pending against Petitioner. (Docket No. 12-19, at 5; Docket No. 12-4, at 12.)  In addition, as part of the plea agreement, Petitioner "**EXPRESSLY AGREE[D] TO WAIVE ALL RIGHTS TO PROSECUTE AN APPEAL ON ANY MATTER IN THIS CASE.**" (Docket No. 12-19, at 13 (emphasis in original).)  As the court explained to Petitioner, the plea agreement was "very generous," given his criminal history. (Docket No. 12-4, at 12.)

Before accepting Petitioner's guilty plea, the court questioned him at length to assure that his decision to plead guilty was done "free and voluntary and [that he was] mentally competent." (*See* Docket No. 12-4, at 15-16, 18-19, 23, 28-29; Docket No. 12-19, at 11, 16-17.)  The Court followed the plea agreement and sentenced Petitioner to 12 years imprisonment;[4] the Court also

---

[2] The offense of aggravated assault with a deadly weapon in the second degree carried a statutory sentencing range of two to 20 years imprisonment. (*See* Docket No. 12-19, at 12.)

[3] Had the Court made a finding that the offense involved a "deadly weapon," it would have substantially increased Petitioner's statutory sentencing range.  In fact, had Petitioner chosen to go to trial and been convicted by a jury, his punishment would have been "somewhere between twenty-five and ninety-nine years because [he was] a habitual offender." (Docket No. 12-4, at 6.)

[4] Petitioner was also sentenced to eight years imprisonment for possession of a controlled substance (cocaine), which was assessed to run concurrently. (Docket No. 12-4, at 19-20; Docket No. 12-5, at 46.)  However, this conviction was later dismissed. (Docket No. 1, at 14, 39.)

adopted the other stipulations in the agreement. (Docket 12-4, at 19-20.)  On June 27, 2017, a judgment was entered that erroneously described the offense as a "1st Degree Felony." (Docket No. 12-19, at 7.)  However, the error was soon discovered and corrected (on August 17, 2017) in a judgment "nunc pro tunc," which correctly reflected that the offense of conviction was a "2nd Degree Felony." (*Id.* at 5.)  The Court's judgment "nunc pro tunc" explained that the original judgment "**stated Degree of Offense as 1st Degree Felony when in fact the Degree of Offense should be 2nd Degree Felony.**" (Docket No. 12-19, at 5 (emphasis in original).)

Petitioner filed a direct appeal, but it was dismissed when the Thirteenth Court of Appeals for Texas determined that he had waived his right to appeal pursuant to his plea agreement. *Aguilera v. State*, No. 13-17-00370-CR, 2017 WL 3633964, at *1 (Tex. App.—Corpus Christi–Edinburg Aug. 24, 2017, no pet.).  Petitioner attempted to file a late petition for discretionary review, which was apparently denied. (*See* Docket No. 12-1, at 1.)

On December 1, 2018, Petitioner filed a state application for a writ of habeas corpus raising five claims alleging trial court errors at sentencing and ineffective assistance of trial counsel. Those claims are similar to the claims asserted in his federal petition. (Docket No. 12-19, at 23-34.)  Specifically, Petitioner asserted the following: 1) he was not mentally competent to stand trial; 2) he was prevented from withdrawing his guilty plea when the charge was changed from "habitual to repeater"; 3) entrapment; and 4) sentencing error on the possession charge. (*Id.*)  He also alleged that his attorney rendered constitutionally deficient performance by failing to file pretrial motions and preventing him from reviewing the evidence. (*Id.* at 28 (Ground Three).)  On March 20, 2019, the Court of Criminal Appeals denied habeas relief without written order. (Docket No. 12-18, at 1.)

**B.      Federal Review**

In seeking federal habeas relief, Petitioner asserts four claims: 1) that he was not mentally competent to stand trial; 2) that he was prevented from withdrawing his guilty plea after the charge against him was reduced from a 1st degree felony to a 2nd degree felony; 3) that his attorney rendered ineffective assistance of counsel by not allowing him to examine the "state's evidence"; and 4) that the police entrapped/induced him to commit the aggravated assault.  (Docket No. 1, ¶ 12.

In moving for summary judgment, Respondent argues that all of Petitioner's claims should be dismissed as "meritless."[5]  (Docket No. 11, at 5.)  Petitioner did not file an opposition to the motion.  Petitioner's claims will be analyzed in light of the standard that applies on federal habeas review.

## II.  STANDARD OF REVIEW

The writ of habeas corpus provides an important, but narrow, examination of an inmate's conviction and sentence.  *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).  "Society's resources have been concentrated at [a criminal trial] in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *see also McFarland v. Scott*, 512 U.S. 849, 859 (1994) (stating that a "criminal trial is the 'main event' at which a defendant's rights are to be determined").  The States "possess primary authority for defining and enforcing the criminal

---

[5] Respondent notes that Petitioner's "claims are arguably time-barred" but "does not contend" that any of them are unexhausted or procedurally barred.  (Docket No. 11, at 5.) Respondent "reserves the exhaustion, procedural bar, and limitations defenses should [Petitioner] attempt to assert additional claims."  (*Id.*)  Because Respondent's motion addresses the merits of Petitioner's claims, this report will also consider his claims on their merits.

law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights."
*Engle v. Isaac*, 456 U.S. 107, 128 (1982).

If a petitioner has presented his federal constitutional claims to the state courts in a procedurally proper manner, and the state courts have adjudicated their merits, AEDPA provides for a deferential federal review.  "[T]ime and again," the Supreme Court "has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (quoting *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013)).  As mandated by AEDPA, an inmate may secure relief only after showing that the state court's rejection of his claim was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1),(2).

Petitioners arguing legal error in state court decisions must comply with § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir.2010) (citing *Williams v. Taylor*, 529 U.S. 362, 404–08 (2002)).  To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).  In contrast to "ordinary error correction through appeal," AEDPA review exists only to "guard against

6

extreme malfunctions in the state criminal justice systems . . . ." *Woods*, 135 S. Ct. at 1376 (quotation omitted).  A petitioner must "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 134 S. Ct. at 1702 (quoting *Richter*, 562 U.S. at 103); *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010); *Williams*, 529 U.S. at 413.  "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

A petitioner challenging the factual basis for a state decision must show that it was an "unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  State court findings are "presumed to be correct" unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Here, the TCCA summarily rejected Prisoner's claims.  Nonetheless, AEDPA deference is proper even in "instances in which a state court may simply regard a claim as too insubstantial to merit discussion." *Johnson v. Williams*, 133 S. Ct. 1088, 1095 (2013); *see also Richter*, 562 U.S. at 99.  These standards will be applied in considering Petitioner's claims.

### III. ANALYSIS

#### A.    Mental Competence

Petitioner's first claim is that he "was not mentally competent to stand trial." (Docket No. 1, ¶ 12 (Ground One).) He cites the psychiatric evaluation performed by David Moron, M.D., and alleges that Dr. Moron found him "not competent, and then at the end of his report he says"

Petitioner is competent. (*Id.*) Respondent argues that Petitioner's claim that he was incompetent is "meritless" because Dr. Moron found him to be competent, as did the trial court. (Docket No. 11, at 9-10.) Respondent also argues that Petitioner has failed to show that state court's finding that he was competent "was contrary to, or an unreasonable application of, clearly established federal law." (*Id.* at 10.)

As noted, prior to pleading guilty, Petitioner's mental competency was evaluated pursuant to a court order.[6] (Docket No. 1, at 19-25.) At the time of the evaluation, Petitioner was not taking any medications. (*Id.* at 19.) Petitioner was alert to person, place, time, and his "legal situation." (*Id.* at 22.) He exhibited a "good understanding of the charges and possible dispositions." (*Id.* at 23.) Dr. Moron found "no evidence of any delusional disorders that would interfere with his ability to establish a trusting relationship with his attorney," and "no indication that [his] depression was severe enough to interfere with his motivation to defend himself." (*Id.* at 24.) Dr. Moron also determined that Petitioner did not have "any cognitive deficits that would interfere with his ability . . . to help his attorney decide on a possible defense." (*Id.*)

Dr. Moron concluded the evaluation as follows:

> It is my opinion that at the time of the interview the defendant had a factual as well as rational understanding of the proceedings against him and possible dispositions and had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. He is experiencing symptoms of a severe depression. Right now the symptoms are not severe enough to interfere with his competency.
> . . . .
> It is my opinion that at the time of the interview the symptoms were not severe to interfere with his competency. He had a good understanding of the charges and possible dispositions, had a good understanding of the proceedings against him, had the capacity to collaborate with his attorney, and had the capacity to testify on his own behalf.

---

[6] Dr. Moron's report is dated April 12, 2017, and Petitioner pleaded guilty and was sentenced on June 23, 2017. (*Compare* Docket No. 1, at 19, *with* Docket No. 12-4, at 1.)

(*Id.* at 19, 25.)

Petitioner is incorrect in asserting that Dr. Moron found him "not competent" somewhere in his report.  To the contrary, Dr. Moron was unequivocal in his determination that Petitioner—although exhibiting signs of severe depression—was fully competent.

During Petitioner's plea colloquy and sentencing, he confirmed that he had "never been treated for a mental illness [and] that no one had suggested that [he] be treated for a mental illness." (Docket No. 12-4, at 15.)   Petitioner's attorney confirmed that he believed Petitioner was "competent and able to assist in his defense."  (*Id.* at 18.)  His attorney also confirmed that he reviewed Dr. Moron's "competency evaluation" with Petitioner.  (*Id.*)

Petitioner's sworn statements in open court are entitled to a strong presumption of truthfulness.  *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).   Indeed, courts should afford "great weight to the defendant's statements at the plea colloquy."  *United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002). Petitioner's sworn statements undermine, if not preclude, his claim that he "was not mentally competent to stand trial."

In the Fifth Circuit, "competency is a question of fact," and "we afford the state trial court the deference due under § 2254(e)(1)."  *Austin v. Davis*, 876 F.3d 757, 779 (5th Cir. 2017). Applying that standard, the state court's competency finding is "presumed to be correct" unless rebutted "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Petitioner has failed to overcome the presumption of correctness; in fact, there is essentially no evidence supporting his

position.[7]  As such, Petitioner's claim that he was incompetent during his state court proceedings

is baseless and should be rejected.

**B.      Withdrawal of Guilty Plea**

Petitioner's next claim is that he was "prevented from withdrawing [his] plea when [the]

charge was changed from a first degree [felony] to a [second] degree [felony]." (Docket No. 1, ¶

12 (Ground Two).)   Respondent argues that this claim should be rejected because Petitioner

"underst[ood] the nature of the charges [and] the consequences of his plea." (Docket No. 11, at

13.)

Before addressing whether Petitioner understood the charges and potential penalties, it

should be noted that his claim appears to be nothing more than an attempt to transform a technical

error in the judgment (as initially entered) into a constitutional claim.  The record shows that the

state court did not change the charge to which he pleaded guilty "from a first degree to a 2nd

degree" felony.  Although the initial judgment stated that the crime was a first degree felony, the

error was corrected by a "nunc pro tunc" judgment, clarifying that the offense of conviction was a

"2nd Degree Felony."[8]  (Docket No. 12-19, at 5.)  Petitioner's attempt to suggest that "the charge

---

[7] Even if Petitioner's competency claim were considered a mixed question of law and fact, he has failed to show that the state court's competency determination was an unreasonable application of federal law.  *See* 28 U.S.C. § 2254(d)(1); *see also Austin*, 876 F.3d at 781 (deciding, "in the alternative," that petitioner's competency claim also failed if considered as a mixed question of law and fact).

[8] "Literally translated, the latin phrase 'nunc pro tunc' means 'now for then.'" *United States v. Hitchmon*, 587 F.2d 1357, 1360 (5th Cir. 1979).  "Orders may be entered nunc pro tunc to the end that the record accurately reflect what was actually done on a previous date." *Id.*  "Under Texas law, a *nunc pro tunc* judgment simply corrects the written record to show the true judgment of the court." *Murray v. Director*, TDCJ-CID, No. 08-CV-156, 2009 WL 175199, at *2 (E.D. Tex. Jan. 26, 2009) (citing *Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. 1980)).  In addition, "[i]n Texas, trial courts use a judgment *nunc pro tunc* to correct clerical errors made in a judgment." *Frisinger v. Thaler*, No. 12-CV-987, 2013 WL 375179, at *2 (W.D. Tex. Jan. 30, 2013) (Magistrate Judge's recommendation) (citing *State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994)).

was changed" is frivolous.   Nevertheless, in an abundance of caution, his claim will be liberally construed as challenging whether his plea was voluntary and knowing.

"The standard [for the validity of a guilty plea] was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). "'[A] guilty plea cannot be voluntary unless the defendant has real notice of the true nature of the charge against him.'" *Davis v. Butler*, 825 F.2d 892, 893 (5th Cir. 1987) (quoting *Bonvillain v. Blackburn*, 780 F.2d 1248, 1250 (5th Cir. 1986)). "However, 'a guilty plea [will] be upheld as voluntary even if the trial judge failed to explain the offense if the record show[s] that the defendant understood the charge and its consequences.'" *Davis*, 825 F.2d at 893 (quoting *Bonvillain*, 780 F.2d at 1250).   Furthermore, "'[t]he consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged.'" *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)); *see also Hobbs v. Blackburn*, 752 F.2d 1079, 1082 (5th Cir. 1985) ("'As long as [the defendant] understood the length of time he might possibly receive, he was fully aware of his plea's consequences.'" (quoting *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981))).

Here, the record conclusively shows that Petitioner "understood the charge and its consequences." At the sentencing hearing, the following exchanges took place between Petitioner, his attorney, and the Court:

> **The Attorney**: Okay.  I told you that in the aggravated assault case, which is 2016-DCR-2389, it's a first-degree felony, the State of Texas has offered you twelve years TDC in exchange for your plea.  There would be no affirmative finding of a deadly weapon, and the Court was willing to order all relevant drug counseling, alcohol counseling that you needed.  But you decided that you wanted to reject that offer.  Is that correct?
>
> **Petitioner**: Yes, sir.

11

. . . .

**The Attorney**: Okay.  And I've explained to you that if we go to trial, there's a chance that the jury is going to have to assess punishment somewhere between twenty-five and ninety-nine years because you're a habitual offender.

. . . .

**The Court**: Okay.  And if you go to a jury trial and get found guilty, you're looking at a minimum of twenty-five years.

. . . .

**The Attorney**: And likewise, you also understand that that's in the best-case scenario, if the jury gives you twenty-five years.  A jury could assess a sentence of ninety-nine years.  You understand that?

**Petitioner**: Yes, sir.

. . . .

**The Court**: I mean, I'm letting you know, I'll do the twelve because you got twelve last time, but I won't go under what you got last time.  I'll run them concurrent.  I don't have a problem doing that.  I'll give you credit for any and all jail time you've already done.  I don't have a problem with that.  I've even told your attorney I won't make an affirmative finding of a deadly weapon.  I mean, I'm being very generous with you.

**The Attorney**: She's bending over backwards.

. . . .

**The Court**: And in Cause No. 2016-DCR-2389, I can sentence you anywhere from five to ninety-nine years, or life, and up to a $10,000.00 fine?  You understand that?

**Petitioner**: Yes, ma'am.

. . . .

**The Court**: . . . that would run concurrent with the twelve years that they're offering you in the aggravated assault?  Do you understand those are the recommendations?

**Petitioner**: Yes, ma'am.

(Docket No. 12-4, at 4-8, 12, 16.)

Ultimately, Petitioner decided to plead guilty to the aggravated assault, and did so "[f]reely and voluntarily."  (*Id.* at 19.)  In fact, he did so after being admonished numerous times at sentencing of the favorable terms of the plea agreement should he plead guilty, and also of the

sentencing exposure should he decide to plead not guilty and proceed to trial.[9]  The Court followed the recommendations of the State and sentenced Petitioner to "twelve years in the Texas Department of Criminal Justice, Institutional Division." (*Id.* at 20.)

During Petitioner's state writ proceedings, his attorney wrote him a letter responding to Petitioner's allegations.  Counsel explained that "[w]hether the Aggravated Assault was a 2nd degree or a 1st degree, the applicable range of enhanced punishment in [his] case was going to be 25 to 99 years in prison, had the case gone to trial." (Docket No. 1, at 39-40.)  Counsel also stressed the following:

> For all intents and purposes, if the State sought the enhanced punishment, Section 12.42 of the Texas Penal Code would be applied to you by either the court, or jury, at sentencing.
> . . . .
> Therefore, [Judge Leal's] most probable sentencing option would have also been to assess punishment somewhere between the allowable 25 to 99 year range.
> . . . .
> This was another serious concern, because whether or not the 2016 Aggravated Assault was prosecuted as a 2nd degree (or it became a 1st degree because the victim was your nephew and the State amended the indictment to charge a 1st degree because the assault happened on a family member from the same household and there was still time to amend because the trial was still 3 months away), the bottom line was that you were now facing a possible range of punishment between 25 years and 99 years.
> . . . .
> Whether [Judge Leal] admonished you to the wrong range of punishment, or not, that was subsequently corrected with a Nunc Pro Tunc Judgment.  That correction, however, did not change the fact that the 12 year sentence was still well within the appropriate range of punishment for the Aggravated Assault with a Deadly Weapon, and it was still much lower than the potential 25 year minimum jail sentence you may have received had things not turned out the way you wanted at trial.

---

[9] To say that Petitioner's decision to plead guilty under the circumstances was prudent would be a gross understatement.  To begin with, the evidence that Petitioner angrily attacked his nephew with a pair of large garden shears was overwhelming.  "[T]o the dismay of the entire family," Petitioner's nephew decided "that he wanted [Petitioner] to face the consequences and go to prison for having sent him to the hospital with a punctured lung." (Docket No. 1, at 57.)  In addition, the 12-year sentence that Petitioner was to receive by pleading guilty was far lower than the minimum 25-year sentence he faced should he be convicted at trial.

13

(*Id.* at 42, 45.)

As shown by the record, Petitioner "understood the length of time he might possibly receive," and, as such, "he was fully aware of his plea's consequences." *Hobbs*, 752 F.2d at 1082 (quoting *Bradbury*, 658 F.2d at 1087). His claim that his constitutional rights were violated when he was not allowed to withdraw his guilty plea was considered and rejected by the state habeas court.[10] *See* 28 U.S.C. § 2254(d)(1). Because Petitioner has failed to show that the state court's rejection of this claim was an unreasonable application of" federal law, his claim should be rejected.

## C.    Ineffective Assistance of Counsel

Petitioner alleges that his attorney rendered ineffective assistance of counsel by preventing him from examining the state's evidence. (Docket No. 1, ¶ 12 (Ground Three).) Courts assess an attorney's representation under the framework set out in *Strickland v. Washington*, 466 U.S. 668 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Under *Strickland*, a criminal defendant's Sixth Amendment rights are "denied when a defense attorney's *performance*

---

[10] As noted, the Texas Court of Criminal Appeals denied Petitioner's state writ "without written order." (Docket No. 12-18, at 1.) The denial by the Texas Court of Criminal Appeals is considered a decision on the merits and this is entitled to AEDPA's deference. *See Neal v. Puckett*, 239 F.3d 683, 686 (5th Cir. 2001) ("In the context of federal habeas proceedings, adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive as opposed to procedural."); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997 (holding a "denial" signifies an adjudication on the merits while a "dismissal" signifies that the claim was declined on grounds other than its merits); *see also Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres* for the proposition that, "[u]nder Texas law a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of the claim").

falls below an objective standard of reasonableness and thereby *prejudices* the defense." *Yarborough v. Gentry*, 540 U.S. 1, 3 (2003) (emphasis added); *see also Rompilla v. Beard*, 545 U.S. 374, 387 (2005); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

To establish deficient performance, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct." *Wiggins*, 539 U.S. at 521. Instead, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Id.* at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90.

With regard to the prejudice requirement, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Wiggins*, 539 U.S. at 534. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *See Strickland*, 466 U.S. at 694; *Wiggins*, 539 U.S. at 534.

Here, it is unnecessary to address the issue of counsel's alleged deficiency because it is obvious that Petitioner has failed to meet the prejudice requirement. *See Armstead v. Scott*, 37

F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."). In pleading guilty, Petitioner advised the Court that he had not reviewed all of the relevant documents with his attorney, just "[s]ome of them." (Docket No. 12-4, at 17.) Specifically, he stated that he had not seen the "lab report" regarding the drug analysis as it related to the possession of a controlled substance he was also pleading guilty to. (*Id.*) After reviewing the lab report in open court, Petitioner confirmed that he had "seen the documents." (*Id.* at 18.) Notably, when asked if he was "satisfied with the representation of [his] attorney," he responded "Yes, ma'am." (*Id.*) Petitioner did not mention or identify any other "state's evidence" that he felt he needed to review prior to pleading guilty.[11]

Petitioner's attorney later wrote a letter to Petitioner responding to his complaint about not seeing all the evidence. Counsel pointed out that Petitioner "saw the exhibits and the evidence that was attached to the plea papers" in open court. (Docket No. 1, at 43.) Counsel also highlighted that pending sentencing Petitioner had been "out on bond" for 75 days. (*Id.* at 44.) However, during this time, Petitioner:

- "never once called [his] office";

- "never once, came by [his] office";

- "never once made an appointment";

- never "made the effort to come see [him] to talk about [his] cases"; and

- "chose not to look" at the evidence even though there was "ample time."

(*Id.*) Put simply, Petitioner made no effort to view the evidence with his attorney and "never bothered" to go to his office. (*Id.*)

---

[11] Petitioner's attorney also made it clear at sentencing that he reviewed Dr. Moron's competency evaluation with Petitioner prior to the hearing, but that Petitioner "forgot that [he] had reviewed it with him." (Docket No. 12-4, at 18.)

To meet *Strickland*'s prejudice requirement, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. "[S]elf-serving conclusory statement[s] that" counsel's deficient performance prejudiced the defense "standing alone, fall[] far short of satisfying *Strickland*'s prejudice element." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). A petitioner must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.

Here, Petitioner does not attempt to show or describe how he was prejudiced by counsel's supposed ineffective assistance as it related to viewing the relevant evidence. Petitioner's claim should be dismissed on that basis alone. *Miller*, 200 F.3d at 282 (the Fifth Circuit agreed that "the district court properly determined that these three claims of ineffective assistance were conclusory").

Moreover, Petitioner's ineffective assistance of counsel claim was considered and rejected by the state habeas court. While "[s]urmounting *Strickland*'s high bar is never an easy task[,]" *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), ineffective-assistance claims that the state courts have adjudicated on the merits warrant a "doubly deferential judicial review" under AEDPA. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). A state court's adjudication of *Strickland* claims "must be granted deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101. "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."[12] *Id.* at 105.

---

[12] As the Fifth Circuit has explained, "the test for federal habeas purposes is *not* whether [an inmate] made that showing [required by *Strickland*]. Instead, the test is whether the state court's decision--that [the inmate] did *not* make the *Strickland*-showing--was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003); *see also Charles v. Thaler*, 629 F.3d 494, 501 (5th Cir. 2011) (same) (citing *Schaetzle*).

Petitioner has neither made the showing required by *Strickland*, nor shown that the state habeas court unreasonably applied *Strickland* in ruling that he failed to meet the prejudice requirement.  For these reasons, his ineffective assistance claim is meritless.

## D.    Entrapment

Petitioner's final claim is that he was entrapped and induced "by the police to commit the crime." (Docket No. 1, ¶ 12 (Ground Four).)  Respondent argues that Petitioner's voluntary guilty plea—in effect—waived his claim that he was entrapped or induced to commit the crime. (Docket No. 11, at 14-17.)  Petitioner's final claim is frivolous.

"The entrapment defense focuses on the intent or predisposition of the defendant to commit the crime rather than on the conduct of the government's agents." *United States v. Yater*, 756 F.2d 1058, 1062 (5th Cir. 1985).  "The government's provision of aid, incentive, and opportunity to commit the crime does not amount to entrapment unless it appears that the 'defendant has done that which he would never have done were it not for the inducement of Government operative.'" *United States v. Bower*, 575 F.2d 499, 504 (5th Cir. 1978).  "The question of entrapment goes to the basic guilt or innocence of the defendant." *Yater*, 756 F.2d 1062.

Petitioner alleges that he was entrapped "by the police to commit the crime" because Officer Priscilla Zavala—who was investigating Petitioner's drug activities—engaged in a sexual relationship with his nephew (the victim of the aggravated assault).[13] (Docket No. 1, ¶ 12 (Ground Four).)  According to Petitioner, Officer Zavala "slept with [his] under-age nephew . . . to try to see if [his] nephew would lead her to [Petitioner's drug] supplier." (*Id.*)  Essentially, Petitioner's

---

[13] The exact nature of Petitioner's relationship with Officer Zavala is unclear.  Petitioner describes her as a "cop," an "informant," his "girlfriend," and as a "lying, drug using slut who wore a badge only when it suited her purposes." (Docket No. 1, ¶ 12 (Ground Four), ¶ 18; Docket No. 12-19, at 32.)  In any event, as is explained above, Petitioner's novel entrapment claim is baseless (at best).

entrapment theory is that because Officer Zavala was sexually intimate with his nephew, the rage and jealousy that Petitioner felt toward his nephew on the night of the aggravated assault was induced by the police, and thus is not culpable for his actions. Petitioner's allegation is absurd.

Be that as it may, Respondent is correct that "a plea of guilty waives all nonjurisdictional defenses except pretrial matters covered by Rule 11(a)(2)." *United States v. Sarmiento*, 786 F.2d 665, 668 (5th Cir. 1986). "Entrapment, a defense on the merits, was waived by [Petitioner's] guilty plea." *Id.*; *Yater*, 756 F.2d at 1063 ("A guilty plea consequently *waives* the right to assert the defense" of entrapment.). Here, Petitioner "entered a guilty plea, which effectively waived his right to the defense of entrapment." *Yater*, 756 F.2d at 1063.

Once again, Petitioner has wholly failed to show that the state court's rejection of his entrapment claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As such, Petitioner's final claim that he was entrapped or induced by the police to assault his nephew should be denied.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment (Docket No. 11) be GRANTED, that Petitioner's § 2254 habeas petition (Docket No. 1) be DENIED, and that this action be DISMISSED. For the reasons discussed below, it is further recommended that Petitioner be denied a certificate of appealability.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the § 2254 Rules instruct

that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, RULES GOVERNING SECTION 2254 PROCEEDINGS. Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of a habeas corpus proceeding). An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329. As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's claims should be dismissed on their merits. For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable the conclusion that these claims lack merit, nor are the issues presented adequate to deserve encouragement to proceed further. Accordingly, Petitioner is not entitled to a COA.

## NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to Petitioner and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on August 26, 2020.

Peter E. Ormsby
UNITED STATES MAGISTRATE JUDGE